UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO GALVAN OLAMENDI (A-Number: 029-583-016),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, *et al.*,<br>Respondents. | Case No. 1:26-cv-5946-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Ernesto Galvan Olamendi, a 79-year-old citizen of Cuba, came to the United States prior to 1988. On September 5, 1990, an immigration judge ordered petitioner removed to Cuba. In January 2026, ICE re-detained petitioner to attempt to remove him. On February 24, 2026, ICE was notified that the government of Cuba denied petitioner's repatriation. ICE seeks to remove petitioner to Mexico instead and has kept him in custody to do so. Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), and 8 U.S.C. § 1231(a)(6). For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

## Background

Petitioner Ernesto Galvan Olamendi, a 79-year-old citizen of Cuba, came to the United States prior to 1988. *See* ECF No. 13-1 at 8. On September 5, 1990, an immigration judge ordered petitioner removed to Cuba. *Id.* at 36. Petitioner appealed the order of removal, and the BIA dismissed the appeal on July 24, 1992. *Id.* at 38. At some point, ICE released petitioner on an order of supervision. *See id.* at 8, 43 (revocation of order of supervision).

ICE re-detained petitioner on January 4, 2026, upon his release from local criminal custody for an arrest the day before. *Id*. at 6-7. The notice of revocation notified him that his release was being revoked because of "changed circumstances." *Id.* at 43. The notice does not specify those alleged changed circumstances. *Id.* An ICE officer conducted an informal interview for petitioner to "respond to the reasons for revocation of his or her order of supervision stated in the notification letter." *Id.* at 45. The memorandum regarding this interview does not indicate that petitioner made any statement. *Id.*

ICE attempted to remove petitioner to Cuba, which denied petitioner's repatriation on February 24, 2026. *Id*. at 2. That same day, ICE informed petitioner that it intended to remove him to Mexico. *Id*. at 47. ICE also gave petitioner a warning for failure to depart. *Id*. at 49. On March 24, 2026, ICE served petitioner with a notice for failure to comply, notifying petitioner that because petitioner had "failed to comply with ICE's efforts to remove [him] to Mexico," ICE was extending the statutory removal period. *Id.* at 53. ICE has kept petitioner in custody since January 4, 2026.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner asserts that his removal is not reasonably foreseeable under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), and thus his continued detention violates due process.[1] ECF No. 1 at 7. Petitioner's removal order was issued on September 5, 1990, and all appeals were exhausted on July 24, 1992. *See* ECF No. 13-1 at 36, 38. At some point, ICE released petitioner on an order of supervision. *See id.* at 8, 43 (revocation of order of supervision). ICE then re-detained petitioner on January 4, 2026, for the purpose of trying to remove him. ECF No. 13-1 at 6-7. Cuba refused take petitioner back, so ICE is currently trying to remove him to Mexico. ECF No. 13-1 at 47. Petitioner has not consented to go to Mexico. *See* ECF No. 13 at 2.

Respondents concede that they are holding petitioner beyond the 90-day statutory removal period provided in section 1231(a)(1).[2] ECF No. 13 at 4-5. Accordingly, respondents are detaining petitioner under section 1231(a)(6), which provides for detention "beyond the [90-day statutory] removal period" for certain noncitizens. *Id.* at 4. In *Zadvydas*, 533 U.S. 678, the Supreme Court considered prolonged immigration detention after a final order of removal. Although the government has statutory authority to detain noncitizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*, 533 U.S. at 699. The Supreme Court established a burden-shifting framework to determine

[1] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

[2] Respondents do not argue that ICE had the authority to extend this 90-day statutory period based on petitioner's refusal to consent to removal to Mexico. *See* ECF No. 13 at 4 (acknowledging that ICE is holding petitioner under § 1231(a)(6)). Although ICE provided petitioner a notice of failure to comply on March 23, 2026, that purported to extend the 90-day period, *see* ECF No. 13-1 at 53, that period may only be extended if the noncitizen fails to cooperate with his or her "removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). As petitioner's order of removal only addresses his removal to Cuba, *see* ECF No. 13-1 at 36, his refusal to go to Mexico did not extend the statutory period. *See Obando Vargas v. Blanche*, No. 1:26-cv-5343-DAD-AC, 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026).

whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months, after the final order of removal, when the detention is related to effectuating removal.[3] *Id.* at 701.

Respondents concede that the government has detained petitioner for over the six-month presumptively reasonable period set forth in *Zadvydas*. Petitioner has been detained since January 4, 2026—almost eight months at this point. Respondents argue that petitioner "has not proven there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 13 at 5. I find that petitioner has met his burden under *Zadvydas*. Petitioner alleges that his "deportation is unreasonable unforeseeable in the near future." ECF No. 1 at 7. Cuba has refused to take him back since 1992. ECF No. 13-1 at 2, 38.

Regarding removal to Mexico, respondents mention a "standing agreement" between the United States and Mexico to remove Cubans to Mexico, but do not set forth the terms of the agreement or provide any documents in support. ECF No. 13 at 2. Rather, respondents cite two cases—*Navarro v. Lyons*, No. 26-cv-10876-WGY, 2026 WL 816791 (D. Mass. Mar. 25, 2026) and *Sanchez v. Bondi*, No. 25-cv-2573-KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026)—both of which found fault with the government's intent to hold those Cuban petitioners indefinitely until they agreed to be removed to Mexico. In *Navarro*, the court ordered the government to produce proof of the agreement, questioning whether such an "unwritten," "handshake" agreement was "but a stark admission [by the government] that here there's no process at all beyond 'it is what we say it is.'" 2026 WL 816791, at *2-3. In *Sanchez*, the court held that the Cuban petitioner's prolonged detention beyond six months for removal to Mexico

---

[3] "Numerous courts have held, however, that the burden-shifting scheme of *Zadvydas* is only applicable to those noncitizens who had been detained and never released following a final order of removal." *Martinez v. Bondi*, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) (citing *Zadvydas*, 533 at 701); *see also Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-cv-4371-DAD-JDP, 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026). In those cases, "it is [ICE's] burden to show a significant likelihood that the alien may be removed pursuant to 8 C.F.R. § 241.13." *Martinez*, 2025 WL 3650477, at *3. As it is unclear whether and for how long petitioner was previously detained after he was ordered removed in 1990, I will assume that he was not previously detained and will apply the more demanding *Zadvydas* burden-shifting framework, under which I find that petitioner has met his burden.

was unlawful, as it was contingent on his consent, "which he [was] unwilling to provide." 2026 WL 160882, at *3. Although respondents have provided no other evidence of an agreement between Mexico and the United States, the spate of recent habeas cases involving the attempted removal and prolonged detention of non-consenting Cuban citizens to Mexico certainly suggests that Mexico will only accept removal if the immigrant consents. *See, e.g.*, *Hernandez Betancourt v. Dep't of Homeland Sec.*, No. 1:26-cv-4501-DAD-JDP, 2026 WL 2280948 (E.D. Cal. Aug. 7, 2026); *Torres Cruz v. Chestnut*, No. 1:26-cv-4690-DAD-SCR, 2026 WL 2057108 (E.D. Cal. July 16, 2026); *Palmer-Sardinas v. Chestnut*, No. 1:26-cv-3520-DC-SCR, 2026 WL 2043395 (E.D. Cal. July 15, 2026), *report and recommendation adopted*, 2026 WL 2216044 (E.D. Cal. July 31, 2026).

Respondents cite *Lema v. I.N.S.*, 341 F.3d 853, 854 (9th Cir. 2003), for the proposition that petitioner may be detained indefinitely if he "fails to cooperate fully and honestly with officials." Respondents claim that petitioner's lack of consent to removal to Mexico meets this standard. ECF No. 13 at 5. However, the record contains no evidence that petitioner engaged in the kind of "intentionally obstructionist, bad faith tactics . . . designed to frustrate the government's attempts to effectuate a removal order." *Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008). Importantly, respondents do not allege or present any evidence that petitioner refused to cooperate with its attempt to remove him to Cuba. *See* ECF No. 13-1. Rather, it appears that petitioner did cooperate with the attempt to remove him to Cuba, which resulted in Cuba's refusal to take him back approximately seven weeks after ICE re-detained him. *See* ECF No. 13-1 at 2.

Regarding ICE's desire to remove petitioner to Mexico, respondents cite no law requiring that petitioner consent to be removed to a country to which he has not been ordered removed and which will only take him if he consents.[4] Rather, as one district court aptly observed, "[r]espondents may not rely on petitioner's refusal to go along with their improper efforts to

---

[4] In this respect also, *Lema* does not support respondents' argument, as it involved the detention of a noncitizen who refused to cooperate with removal to his home country, not, as here, a noncitizen who refuses to consent to removal to a third country.

remove him to a third country as a basis for denying him habeas relief." *See Boza-Rosales v. Blanche*, __ F. Supp. 3d __, 2026 WL 1412456, at *3 (W.D. Wash. May 15, 2026). In a similar case, this court recently noted that the respondents' argument "appears to be that, because [the] petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous and the court admonishes [the] respondents' counsel to avoid wasting the court's time and resources with such arguments in the future." *Obando Vargas*, 2026 WL 2056618, at *2.

In *Zadvydas*, the Court directed lower courts to "measure reasonableness . . . in terms of the statute's basic purpose, . . . assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. Petitioner has met his burden, and respondents have failed to show that there is a significant likelihood that they will be able to remove petitioner within a reasonably foreseeable period. As there is no "significant likelihood that petitioner will be removed in the reasonably foreseeable future," his continued detention is unlawful, and he must be released.[5] *See Aaron H. v. Chestnut*, No. 1:26-cv-1232-TLN-SCR, 2026 WL 1398910, at *2 (E.D. Cal. May 19, 2026); *Castillo Rivas v. Bondi*, No. 26-cv-0134-KKE, 2026 WL 295705, at *3 (W.D. Wash. Feb. 4, 2026); *Hoac v. Becerra*, No. 2:25-cv-1740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025). I recommend that petitioner be immediately released from immigration custody.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 029-583-016) from its custody subject to the previously-imposed conditions of release, if any.

---

[5] Respondents have attached the 79-year-old petitioner's rap sheet to its response and imply that petitioner may be detained because of his past criminal conduct. *See* ECF No. 13 at 2; ECF No. 13-1 at 10-33. The Ninth Circuit has held that "dangerousness cannot justify indefinite detention under *Zadvydas*." *Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004); *see also Obando Vargas*, 2026 WL 2056618, at *2 (noting that the court has reminded the respondent's counsel multiple times that "criminal history is not relevant to the inquiry established in *Zadvydas* [] and advised counsel not to clog this court's docket with irrelevant evidence").

3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless it obtains a travel document for his removal, if necessary, and follows all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 27, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE